MERRITT, Circuit Judge,
concurring in part and dissenting in part.
While I concur in Sections II.B.. and H.C., I disagree with the majority’s holding in Section II.A. that the district court should have entered judgment for Medical Billing on the basis that Medical Management was not entitled to the $1.8 million jury award because .the Asset Purchase Agreement was unambiguous on its face. It is clear from Ohio law that unless facial ambiguities infected the Asset Purchase Agreement, parole evidence should not have been admitted and considered by the jury. It is my contention, however, that facial ambiguities did indeed infect these two documents.
The Billing Services Agreement clearly states that the services provided by Medical Management will be “in partial consideration for” the Asset Purchase Agreement. It is unclear from the face of the documents what was intended by that language. In addition, paragraph three of the section of the Asset Pin-chase Agreement outlining the obligations between the parties is entitled “Billing Services Agreement,” and describes the billing services arrangement between the two parties. A jury could reasonably construe the inclusion of that paragraph as conditioning performance of the Asset Purchase Agreement on performance of the Billing Services Agreement, especially when combined with the language which indicates that the Billing Services Agreement was “partial consideration” for the Asset Purchase Agreement. I find the terms to be ambiguous on their face, and thus I would uphold the jury’s verdict on the basis that it was not error for the jury to consider the extensive extrinsic evidence it had before it when it concluded that Medical Management was entitled to a $1.8 million jury award.
Given that I believe the parole evidence was admissible, the district court’s judg-' ment as a matter of law should have been reviewed by taking into account all of the information that was before the jury when they made their determination. No party to this litigation has articulated to this court a clear equitable argument that they are in the “right.” Medical Billing admitted in its paperwork to a potential buyer that the rate it was being charged under the Medical Management billing services contract was “above market,” indicating that the company understood the game it was playing with Medical Management. *341 In addition, the potential sale of the Reich, Seidelman & Janicki practice during the same month as their first attempt to terminate the Medical Management contract gives an observer pause as to their intentions, not to mention the evidence that Drs. Reich and Seidelman may have intended to pocket the $2.7 million and construct a reason to terminate as soon as possible. Finally, the jury seems to have found plausible the idea that Drs. Reich and Seidelman were attempting to .hide from their partner Janicki the fact that they had been receiving premium rates, essentially skimming off the top of them radiology practice, and that they therefore wished for Medical Management to continue to bill at the above-market which they had been charging in order not to alert Dr. Janicki to the difference in pricing once the billing was outsourced.
Medical Management, in turn, indicated to the IRS that it purchased a covenant not to compete and some office furniture, not a “premium billing contract,” showing their own knowledge that this was more than a purchase of the right to bill at a 15% rate — at least in form. The information which they were sanctioned for not disclosing to Medical Billing during this litigation also tends to show that they believed they had purchased a covenant not to compete. And, importantly, they have working against them a letter indicating that they understood the risk that they could lose the $2.7 million purchase price upon termination. The decision of the jury could not have been an easy one to make.
The proper standard of review of motions for judgment as a matter of law in the Sixth Circuit for diversity cases is the standard for a directed verdict employed by the state whose substantive law governs the action, in this case, Ohio. See Potti v. Duramed Pharmaceuticals, Inc., 938 F.2d 641, 645 (6th Cir.1991). Under Ohio law, a court must consider the evidence in the light most favorable to the party against whom the motion is made, and may grant the motion only if, taking the evidence in this light, there is but one reasonable conclusion as to the proper verdict. See id.
It is not possible to say that there is only one reasonable conclusion as to the proper verdict in this case when the entirety of the evidence which the jury considered is examined. The decision of the jury should stand because the evidence shows that not only has neither party demonstrated that they are clearly in the right, but in fact both parties have called attention to each other’s numerous mistakes and ambiguities both in word and in action. The jury heard the evidence and were in a better position to weigh its credibility than this court. In fact, the trial judge indicated that based on'her review of the whole record the evidence was “somewhat equivocal,” and indicated that if the parol evidence were included, then she believed the decision of the jury should stand. I agree, and for that reason I would REVERSE the decision of the district court vacating the jury’s decision.